Welcome to day two of this week's worth of arguments before this panel. We have two cases for the morning. I see folks are ready, eager even, so I will call the first case. Francis Erlein Sims v. City of Jasper, Texas. Looks like Mr. Thomas gets to go first. May it please the court, Bruce Thomas on behalf of the plaintiff appellant Francis Sims individually and on behalf of the estate of her son Mitchell Walls. Over 50 years ago in Bruton v. United States, the Supreme Court warned that there are some contexts in which the risk that a jury will not follow instructions is so great and the consequences of that failure so vital to a party's case that, quote, the practical and human limitations of the jury system cannot be ignored. Bifurcation is an important and commonly used tool to address those practical human limitations to help ensure that the jury applies the right evidence to the right issue so that a party is not prejudiced on one issue, such as liability in this case, by emotional and inflammatory elements that is relevant only to a separate issue. Here are damages. By refusing to bifurcate liability and damages in this case, the district court allowed the defendants to exploit those practical and human limitations by pressuring plaintiff's liability case with emotionally charged and prejudicial evidence, evidence which was relevant only to damages. The liability facts in this case for deliberate indifference to cause serious medical needs while he was detained could hardly be any stronger, as those were detailed in large part in the first opinion in this case. He was left on the cell floor for 34 hours as he grew progressively ill, never eating or drinking. Okay, but in that case we said it's a jury case and here it was a jury case and the jury ruled against you, so it's not as if this was a summary judgment and so that makes it a little harder on you. Now, I understand this concept of bifurcation. Are there any Fifth Circuit cases where we reversed for failing to bifurcate liability and damages? Not that I'm aware of. In fact, the only case that we have been able to find that addresses this specific issue where the plaintiff is seeking bifurcation because of prejudicial damages evidence that would prejudice the plaintiff is the one Ninth Circuit case that went with us that said it was an abuse of discretion in that case for the district court not to bifurcate when the plaintiff would be prejudiced by damages evidence. There are cases where the defendant has asked for bifurcation, rather routinely the defendant asked for bifurcation between the Monell claim and the individual claims when there are prior bad acts by the officers that the city or county is concerned will taint the Monell claim and bias it in favor of the plaintiff. So that's done quite often. You also suggested it's common, but it's not common to bifurcate liability and damages in my experience as a state district judge in Texas, as an appellate judge here in the Fifth Circuit looking at cases. That's not common and it's very much something we defer to the district court on. So what is it here that changes that? Well, my experience is somewhat different that we find it quite common that in personal injury cases, for example, that damages and liability are separated and there are other cases where that arises, but what the difference is here is how prejudicial the evidence was in tugging at the jury to be such a bad person that they're overwhelming of the jury with emotionally charged evidence to have the jury rule because plaintiff is a bad person and not look at what was actually or alleging that the plaintiff and her son are bad people and that the jury should rule on that basis rather than looking at the evidence. It's like a magician saying, you know, don't look over here at what's really going on. And Mr. Heflin's a very accomplished magician. And I think you have a really good point on that. This is a really difficult case because this was not the best person ever who passed away and his mother was not the best relationship with him ever, but that was the argument y'all made an opening argument, an opening statement. Y'all got up and said they didn't get along. So y'all were emphasizing that. Well, we were not. We had asked to be bifurcated. We lost the issue. The judge wouldn't bifurcate. So given that we had that situation where we had to try both issues at the same time, counsel made the decision as I think any attorney would to try to defuse those issues as much as possible as a matter of trial strategy. But our position was we never should have been in that position to begin with, just like Mrs. Sims never should have been in a position where she has to choose between her son dying in jail and her son coming home and dealing with his drug problems. The case should have been bifurcated so that we could neatly keep the jury focused only on the issue of liability without the emotional baggage of the damage evidence caning everything that we tried to do. We tried to deal with it, but it was a fait accompli. Were there any jury instructions y'all requested that were not granted? Yes, but they Related to this point. Again, I will tell you when I read y'all's opening statement, I kept looking to make sure it was the plaintiff's opening statement because it sounded like so much what the defendant would have said. So when you get the bad news of you're not getting the bifurcation, you still need to try to work with that. So one thing is instructions. So why wouldn't y'all have asked for more instructions that would have helped? Because I, as a state district judge, had almost 200 jury trials and my experience was juries were trying to follow the instructions. I'm not going to say they're perfect, but they were working hard. So why not? Well, to begin with, it wasn't a prerequisite to preserving the issue. We weren't required to request limiting instructions and the Diaz case actually addressed limiting instructions and said when you have prejudicial evidence like this, limiting instructions wouldn't be sufficient. The social science on the issue tells us that limiting instructions are frequently counterproductive in that they do what I think a lot of trial attorneys intuitively realize that they get the jury to focus even more on the that he was going to deal with a hand that was dealt him and tried to not emphasize the bad ruling against us by continuing to object in asking for limiting instructions that could backfire and the social science tells us that they will backfire often against the party asking for limiting instructions. So that's why it wasn't required and it was a strategy decision the counsel made to try to deemphasize the issues and deal with them as best he could. So we had . . . So what is the biggest part of the case that would . . . if we accepted your argument and we reversed and remanded for a new trial, what would be the biggest part of the original case that wouldn't make it into the liability side? None. None of the relationship damages, evidence. Two clusters of evidence. The bad mom, strained drug relationship evidence and the bad father, absentee father, abusive father evidence with respect to Mr. Quall. Specifically, the emotional heart string testimony that Quall has never spent any time with his son. That he didn't come to birthday parties. That he didn't spend any time with his son on Christmas and holidays like Thanksgiving. That he never sent any birthday cards or Christmas cards to his son. That he never attended any school activities. That he didn't go to parent teacher conferences. That he didn't provide child support for his son. That he allegedly was physically abusive to his son's mother. And all the relationship evidence with respect to his mother. That his mother was responsible for him going to jail because she refused to take him when the had made a number of complaints against her son. Criminal complaints against her son. And what is your best case, I understand that his own death, I understand the liability on that one. But on the parents, what is your best case for the notion that their ability to prevail on liability does not require that they have any relationship with him? Could you say that again? I'm not sure I understand. Okay, so you've got essentially more than one person, more than the dead person suing. You've got the parents, right? We've got the mom suing individually on behalf of the estate, yes. On herself, though. I thought she was also suing for herself. For herself and on behalf of the estate, yes. Okay, right. And I understand the estate, what's the liability. But if the dad has no relationship with the son, what if the mom has no relationship with the son, then can she still prevail? I understand it affects the damages, but can she still prevail? What's your best case on that? Well, I can't cite you a case right now. But that wasn't the evidence. That's their theory that she had no relationship. She had a relationship over 28 years. The last several years was certainly tainted by the drug use of her son. But that doesn't mean that . . . But wouldn't the lack of a relationship go to the issue of damages? Certainly. And so if the trial was bifurcated, the determination initially would be on liability and whether or not they were liable for his death. Right. The jury could then determine that she's not entitled to very much damages at all. But there would be a determination on liability if you had a trial that was bifurcated. Yes, yes. I mean, we wouldn't be standing here today on an appeal if we had a bifurcated trial and the jury had come back against us on damages and awarded nominal damages after hearing this evidence and said she didn't have a relation, thought she really didn't have a relationship with her son, or really had no middle anguish. The point is the lack of a relationship with the son doesn't go . . . his lack of a relationship with his son, her lack of a relationship with her son, the decedent, doesn't go to liability. It goes to damages. It goes totally to damages. That's what I was asking to make sure we had a piece on that. I think Judge Graves is right, but I'm always asking the questions on both sides. So why did he hear that? It was never challenged that we didn't have . . . we couldn't get to the bottom of damages because of a lack of . . . an alleged lack of relationship. There was a relationship for 28 years, but . . . That's your answer. Yes. Okay. And so what is . . . okay, so how would you envision the way this trial goes if we send it back? It would be bifurcated. We'd have a liability phase that just asks the question, what happened while he was in jail? Did he . . . was his medical needs . . . were the defendants deliberately indifferent to his medical needs and, you know, why didn't they . . . And I'm kind of wondering about that because the trial judge did not seem to think you could go very far back on looking at that question, but it does seem to me that the people in the prison were aware of this person. It wasn't like a first time that he showed up in prison. And so this whole picking him up at the hospital and all of that, does that not have some impact on their thinking, should we be calling the emergency . . . should we call 911 or not and so on and so forth? Yes, and it cuts both ways. I mean, the hospital said, as they always do, come back if you get worse. So that's a factor in our favor on the liability issues. They're going to say, well, he acted the same as he acted in previous instances, but our evidence is the contrary. There was no bagging in his vomit in previous instances. In previous instances . . . If it would go back a little bit, it wouldn't just be the moment he got there. It would go back a little bit of what their experience with him had been. I'm not saying that would make them win. I'm just asking. No, there would be the arrest at the hospital. There would be the fact that he uses drugs. What there wouldn't be is all this relationship evidence between him and his mother and between Qualls and his son. That's what was prejudicial to us. That's what's getting the jury to focus on issues that are heart-stricken and have nothing to do with why he was left on the floor for thirty-four hours and had developed rigor mortis before he was ever discovered dead. Those are different facts. Those are different facts than he had ever experienced in any other previous incarceration, either in that jail or in any other jail. Nine days of victim shaming had its intended effect. It overpowered the liability. It's just simply naive to believe that after nine days of this sort of emotionally charged evidence that the jury, that the practical and emotional limitations of the jury were not overwhelmed by this sort of judgment. Good morning, and may it please the Court. Bill Helfand for Sgt. Todrick Griffin, Officer Sterling Leinbaugh, and Ms. Heather O'Dell, a telecommunicator for the Jasper Police Department. I appreciate that counsel knows how the jury came to their decision, but there's simply no basis for that assertion. And in fact, this Court is bound by the Supreme Court's holding in Weeks v. Angelone, cited at page 22 of the brief, that, quote, a jury is presumed to follow its instructions. There is simply nothing in this record that demonstrates that this is unlike any other trial in which a properly instructed jury, in accordance with this Court's model jury charges, did not follow those instructions. Okay, but do you agree that the mom's lack of relationship, we'll just put it that way with him, and his being not a good father, when I said father before that's what I meant, him as the father, does not affect liability? Well, the answer is if that were the evidence, yes, but that was not the evidence. Appellant's counsel did not try the case, so perhaps his excesses with the record might be excused, but he said a number of things which are simply false. There is no record in the, there's no evidence in the record that the doctor at the hospital said, if he changes, bring him back. In fact, the evidence in the record is that Sergeant Griffin and Officer Leinbaugh were told there is no reason to bring him back because he's going to need time to get better. And as Your Honor's question to opposing counsel pointed out, that is based upon a history that Sergeant Griffin and Ms. O'Dell had with Mr. Qualls under the exact same circumstances, where he came from the emergency room to the lockup at the City of Jasper and went through what they called detox. And so, to get back to the court, now, I will, oh, there's also absolutely no evidence, nor any suggestion of physical abuse by Mr. Qualls of his son. That is simply not in the record of this case. Now, having to try the question of both liability and damages, yes, we did play the deposition testimony of Mr. Qualls' estranged girlfriend and mother of their child, who did not want to be in the case and testified that she did not want her son in the case, but whose grandmother, the plaintiff, insisted that he be a claimant in the case. So, we did play her deposition testimony. She would not come to the courthouse. She would not sponsor any testimony, because as she candidly admitted, there was no relationship between Mr. Qualls and his son. But that's irrelevant to liability. So, if we do send this back, that would not come up in the first half? Right. If the court were to bifurcate the case, and I'll come back to that in one second, but I do want to point something out also. That's not the counsel's co-counsel at trial made about what needed to be bifurcated. I thought, I appreciated Your Honor's question as to what would be bifurcated. The answer from trial counsel was the prior historical relationship between Sergeant Griffin and Ms. O'Dell in observing the same situation of Mr. Qualls and her lockup previously, as well as the doctor's, the sheriff's department, and Sergeant Griffin's efforts to find a place for Mr. Qualls other than the lockup to go through detox, which is actually what the hospital recommended. Those are the things trial counsel said required bifurcation. And as Your Honor observed, those questions go to the very issue of deliberate indifference in this case, as the trial judge observed. Particularly subjective. Particularly subjective deliberative indifference. Well, but deliberative indifference, right, it requires two elements. One is a knowledge of a condition, and two, a deliberate choice not to deal with that. And in fact, that's what the evidence in this trial shows. What the evidence was is that the hospital told Sergeant Ewing, I'm sorry, Sergeant Griffin, that there was no reason to bring Mr. Qualls back to the hospital. He just needed time. And that was 100% consistent with Sergeant Griffin and Ms. O'Dell's observations of Mr. Qualls in the past. That's what the trial lawyer asked to exclude. Not these issues of the relationship between father and son and mother and son, except that, again, the question of and particularly from a subjective standpoint, depends upon why was, it starts with, why was Mr. Qualls in police custody? He had not committed a crime. He was not arrested. He was taken into custody because he had nowhere else to go. Despite the fact that the hospital called his mother and asked for a place for him to stay. Despite the fact that the sheriff's office in Sergeant Griffin's presence made the second request. And then Sergeant Griffin spoke to his mother, Ms. Simms, as well. And the evidence was that Ms. Simms said he could not come to her home. She did not want. But you're not suggesting that you get to mistreat him because of the reason he's in custody? No. And once you take him into custody, there's an obligation that you look after. I wholeheartedly agree. And I would. So the reason for his being in custody? Well, I certainly agree with the first part, Judge. I don't agree that the reason for him being in custody is irrelevant. Because again, this, the question is, did these people care for Mr. Qualls? That's what they were tasked to do. Well, you're not suggesting you don't have to care for him if he's there because he has no place else to go. You put him in custody. No, what I was trying to say is that the fact that they took him into their custody starts, is this beginning of caring for him. They could have left him outside the hospital. He had not committed any offense. They could have just left him outside the hospital. In fact, what your honor may recall is that the record shows that the first time the hospital called Sergeant Griffin and Officer Limbaugh offered to drive Mr. Qualls anywhere in the county. They can't leave the county, but anywhere in the county that he would like to go. He told them he had nowhere to go. So they left him at the hospital and told him just don't mess with the hospital people because they were calling complaining that he was trying to break back into the emergency room. When they came back, they asked him if he had anywhere to go. He said he had nowhere to go. They said, let's take you to the lockup. You've been there before. We'll put you in there and you can detox just like you did. Those are the historical facts trial counsel tried to keep out, which do go to the res geste, if I may, of the the question of care versus deliberate indifference. I beg your pardon, Judge? Their subjectivity of what they think, because if this was just a first time person coming in, they may have had a different thinking of what they needed to do than somebody they've kept doing the same thing with, and it's worked out over the past. So again, that I totally agree with Judge Graves that they have to take care of him. But what's in their brain is different than what might have been in the brain of a totally new person coming in the door, right? And that's y'all's argument. I mean, in part about their deliberate indifference, their subjective thinking, why they were not doing more than they did is relevant to their history with this person. If I may, of their treatment of this person, whether they mistreated him, I think is what you're. But because of their history with this person, what they think they need to do might be different than somebody just walking in the door for the first time. Absolutely, Judge. And in fact, that's borne out by the record. Because one of the arguments the trial counsel for Ms. Sims made was when he threw up, you should have taken him back to the hospital. And in fact, the video record demonstrates that when he threw up, Officer Leinbach, who did not have the same experience as Sergeant Griffin, asked, should we call EMS? And they talk about that. And Sergeant Griffin says, no. The doctor said there's no reason to bring him back to the hospital. And this is what he did last time he was here. He just needs time to go through this. So there was the subjective belief that there was no need for further medical care, informed both by the experience as well as the admonition of the doctor. And you'll agree that has nothing to do with his bad relationship with his mother. All the stuff you just said, bad relationship with his mother. I didn't hear you. I'm sorry, Judge. All the things you just finished talking about have nothing to do with his bad relationship with his mother. They have nothing to do with it. Aside from the fact that he had no place to go. And I mean, I guess the obvious question would be, you mean you couldn't go to his mom's house? No, he couldn't because she wouldn't have it. Uh, but aside from that, there's no reason to go into his extended bad relationship with his mother at the liability phase of that trial. Well, except that the trial is a whole trial. So we were picking up a specific issue and saying that doesn't understand. It's a whole trial because the judge said I'm not going to bifurcate it. It could have been a piecemeal trial if it were bifurcated. Right. Well, but I want to point out the trial judge actually, and I'm gonna come back to the law in just a moment here, but the trial judge actually weighed these questions and this is a 42 25. The trial judge pointed out evidence of the law enforcement officers prior experience with Mr Qualls could actually this is what the trial judge said could be beneficial to the appellant's case because the jury might think that the officers had more knowledge of the fact that this gentleman might need medical care. On the other side of that, the judge pointed out that bifurcating the trial could unfairly prejudice the defendant's ability to present the information upon which they relied in making the kind of decisions that are called upon to make. That's at 42 58. But all of this comes. So if we sent it back on, it was bifurcated. You all would still argue that all the stuff we were just talking about the judge Graves said is different from his relationship with the mom. You would still think should be put on into evidence in the liability face. And if it's not and you all lose, you'd be back up to us on that. Well, that was what the trial judge. If we send it back, we need to be a little clear on what's in and what's out, right? Well, that that was that was actually the point that I made in the briefing is that the appellant has never said this is a fact. Judge Graves points to one and certainly everyone's entitled their opinion. This is a fact that should be excluded. And at 42 61 of the record, the trial judge told the party just like any other trial. If you think something is coming in that shouldn't come into the case, then you object. I'm well aware. Like I said, I was a state district judge, so I'm well aware of the need for people to object in the trial. What about the fact of not requesting more instructions? Your opponent says that would have just hurt it. Do you think they should have? I think they're required to judge their required to object, and they're required to request a limiting instruction. That's in rule 105. I appreciate the discussion of social science, but the Supreme Court hasn't seen fit to get rid of rule 105 because of social science. Rule 105 says if evidence comes in for a limited purpose, then the court may be requested to instruct the jury of the limited purpose. Not only did trial counsel never request a limiting instruction, as your honor pointed out in questioning my opposing counsel, Miss Sims Council chose to put this out there, and I don't agree with the assertion that once the judge ruled, I had to jump in with both feet into that argument. In fact, what what Miss Sims Council had the option to do but chose not to, and this is a trial tactic, was to wait and see if to what extent we could raise those things in the defense of the case and to make proper objections. Almost the entire argument of bifurcation was premised on the argument of 403. What would that objection be? Relevance. Well, if you're trying liability and damages, it's relevant on damages, isn't it? Well, except that if liability and damages are being tried in a single unbifurcated trial, then I don't know how the objection would be that his relationship with his mother is not relevant. It is relevant to damages. I take your point, Judge, but that the problem is your honor is dealing with a shift in the argument from the trial court to the appellate court. Opposing counsel has argued about damages. His trial counsel was arguing about liability facts, and so the objection would have been relevance or, as I was about to say, the evidence is going to be more prejudicial than probative. And I thought Judge Troncali made an excellent point, which is, first of all, if it's more prejudicial than probative, it must mean there's some relevance to it. And second, he said, I'll have to weigh that. This is at 4261. I'll weigh that if and when that comes up. That's how a trial proceeds. Instead, what the plaintiff, the appellate did here was basically not only just give up on these two cases, but he gave the jury box themself and now says it's all because the trial judge made a wrong pre-trial ruling. And I just then not only acceded to it, I actually adopted it. And that, if I could, just use my additional time to point out the law. Excuse me. This court in Nestor v. Textron said, the motion to bifurcate is with a sole discretion of the trial court. And this court will not reverse absent clear abuse of that discretion. So reasonable minds may differ. I respect that. But if abuse of discretion means anything, then the appellant has to show that. Notably... And you think, well, I understand that bifurcation is something that kind of has to be done at the outset. But the fact that the judge said, you know, make your objections and stuff might have meant the judge could have done that actually during the trial, could have said you're putting in too much on damages. I'm going to stop it. Let's just talk about liability and we will bifurcate it. I think that could be done in the middle of the trial. It's not perfect, but it could be done if the judge was thinking, oh, my gosh, oh, my gosh, I should have granted this. Boom. Stop. But it requires some understanding of how bad the mom was in their opening statement. Right? Absolutely no doubt, Judge. And in fact, although counsel says bifurcation is common, it's notable that the appellant only cites three cases. But to your point, Judge, one of the cases that the appellant cites... Mr. Hilferman? Excuse me. You may have my water. I haven't used it, if that would be helpful. I don't know if it will help, but in my limited time, I think if you can suffer through it, I will. To your point, Judge Haynes, one of the cases that the appellant cited, Thomas v. Norrit, a district court case from 2017, was a case in which the district judge declared a mistrial because of the fact that the evidence of the . . . this was an employment case. The evidence of post-employment post-termination employment. The trial judge determined was becoming too much of a factor in the case and believed that the jury was not going to be able to parse that from the case. Declared a mistrial and then found it appropriate to proceed with bifurcation. And also the judge could have granted a new trial had this been handled differently at the trial level by the plaintiff's attorney in terms of how they kept objecting and all of that kind of stuff. That would have been a different animal, perhaps, in terms of getting a new trial. Or, as you say, a mistrial. Or, as I said, I think if it was early enough in the case, maybe continuing the trial but stopping the discussion of damages. Certainly, Judge. And I should point out at 4263 and 64 of the record, the trial court addressed appellant's trial counsel's repeated representations in the trial court that he had some self-proclaimed expertise at trying 1983 cases. And, in fact, what the trial judge said was, I'm highly confident, given appellant's counsel's experience in these types of cases, that you're going to be able to parse out for the jury the testimony and evidence that have nothing to do with the appellant. And I think the jury's smart enough to see the difference. Okay. But if we end up disagreeing with you and we send it back, should we lay out what's what? I realize we can't be super detailed. That's something the district court does. But it seems like there's a good bit of stuff you're thinking the appellant would try to keep out that is relevant to liability, and particularly to the deliberate indifference subjectivity. That's exactly what the trial judge found. And respectfully, you wouldn't be disagreeing with me. You would be operating outside the context of abuse of discretion. And in that regard, let me just point out one other case. I should point out, appellant doesn't deal with the Nestor case at all. But that is the law in this circuit on bifurcation. And the other issue that the appellant never addresses is this court's opinion in Swofford v. B&W, which is cited at page 17 of the brief. And I think this resolves Your Honor's question as to whether you disagree with me. The Fifth Circuit, this court has held there's an important limitation on ordering a separate trial of the issues under 42B. Quote, the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice. And that's where I don't think, Your Honor, respectfully, I don't think that this court can reverse for abuse of discretion. The record shows a significant amount of the trial judge's discretion. He actually walked through the application of that discretion in accordance with the requirements of the rules. He specifically said there's no economy. He walks through it at, let me just take a look at the record site since my time is short, 4247. He says there's no convenience. It doesn't expedite or economize. And he said if it's relevant, it's going to have some prejudicial effect. So don't tell me that the reason I need to do it is because there's prejudicial evidence. In Swofford, this court set the standard. There must be a determination that the issue to be tried was so distinct and separable from the others. And more importantly, the ultimate deference belongs not to me, but to the trial judge. He did exactly what the rule requires and exactly what this court in Nestor mandated. Thank you for your time. Thank you for the offer of water. It still stands. Well, it's true I didn't try the case, but I have read the record and it just doesn't support much of what Mr. Huffman just said. The discharge papers at the hospital were given to the officers and specifically said, like all discharge papers say, if he doesn't get better, if he gets worse, come back to the hospital. The hospital, of course, did not know that he was going, Mr. Wallace was going to take a bag of methamphetamine into the jail, not be dressed out in a bag, and have another overdose. The physical abuse that was alleged was the physical abuse of Mr. Quall's son's mother. I didn't mean to say if I did, I don't think I did, that there was any allegation that he had physically abused his son, although there was quite a bit of evidence from the mother that she was concerned for her son's safety in being around Mr. Qualls. The issue has not changed. I have not tried to migrate the issue on appeal on bifurcation. I think you will find that the bifurcation motion and trial counsel's argument at trial mirrors very much what our brief says, very much what our argument. But do you agree that they can still put on their knowledge of him from the past that affected their brains, affected their subjectivity and deliberate indifference that might have been different with somebody walking in the door for the first time? Yes. What these defendants... In the liability. Yes, but what we were arguing about is that they could not bring in on liability all crimes that he had committed, regardless whether these officers had any knowledge of them or not. Well, I mean, they can't say why he came into the prison, but the fact is he's been in the prison before, they'd had this experience, they'd seen him vomit, la la la la la, and so they were just walking down that same path that had worked with him in the past, which is different, like I said, from somebody who's a first-time arrested person. Yes, I don't disagree that they can testify as to their own experience with it, and I don't think you will find our bifurcation motion says anything different. And so what is left out is his relationship with his mom and his relationship with, you know, being a bad dad and having a bad mom. And generally a bad person. And I'm putting that in quotes, I don't mean to be disrespectful to the mom, I'm simply speaking to what the arguments are that you all have made. So again, I have no personal knowledge of this at all. It's just extraordinary that Mr. Heflin would say that he was not arrested. In fact, the language that he used at trial is that the officers were forced to arrest him because his mother had abandoned him and wouldn't take him in. Yes, he was arrested for criminal trespass. They were not running a homeless shelter. He was never free to leave. He was never free to call his own ambulance. He was at the mercy of the city that arrested him, and he was not going to receive any attention or any help unless they put him in jail. The judge didn't change his mind on our post-trial motions raising the same thing. The judge was pretty clear at the outset of the case that we're going to throw it. He tried it in a way that it's different than some, I mean, and I understand every lawyer has to make their own determination, but some lawyers would have been objecting a lot, not making an opening statement like that, so on and so forth. So that's why that influenced the judge. Some lawyers would have gone with a different strategy. That was the strategy called here, but it wasn't a prerequisite to preserve the appeal. What the judge really harped on during his reasoning is he was concerned that if he granted bifurcation in this case, then everybody in all future cases would come in and ask for bifurcation. That's what was driving his decision. Thank you. All right. Thanks to you both for bringing your